GEORGE K. LIGHT, petitioner-appellant,

*v.*

ETTA A. LIGHT, defendant-respondent:

[Decided April 4th, 1924.]

The judges being equally divided on the question whether the judgment should be reversed, the judgment is affirmed solely because of such division, which renders any opinion by the court impossible.

On appeal from the court of chancery advised by Advisory Master Charles V. D. Joline, who filed the following conclusions:

"The petition in this case was filed on the 28th day of July, 1922, and alleges that the defendant deserted the petitioner in the month of May, 1916, and that said desertion has been willful, continued and obstinate. There was a previous case between the said parties in chancery of New Jersey, the docket number being 38/35. Te petition in that case was filed April 22d, 1914, and alleged that the defendant, Etta Light, deserted the petitioner, George K. Light, in the month of September, 1908.

"Depositions were taken in said cause before the late William H. Francis, one of the special masters of this court, and he made a report on the 23d day of August, 1915, the same being filed on the 24th day of August, 1915.

"The master in said cause found that the desertion occurred on or about the 29th day of September, 1901, and that at that time the petitioner, George K. Light, was a *bona fide* resident of, and that his permanent home was in, Brooklyn, in the State of New York.

"He also found as follows: 'And I further find and report that, when the petitioner's cause of action arose, on or about the 29th day of September, 1903, the said petitioner, George

K. Light, was still a *bona fide* resident of, and having his per-
manent home in, Brooklyn, in the State of New York, and
the said defendant, Etta A. Light, was also a *bona fide* resi-
dent of the same place, and that at the time when said cause
of action arose, the cause of action alleged in the petitioner's
petition [desertion], was not and is not now recognized in
the said State of New York as a ground for the relief asked
for by the petitioner in his petition filed in this cause.'

"A decree of dismissal was signed in said case on the
29th day of October, 1915, and filed the same day, and is *res
judicata* upon the matters alleged in the petition and estab
lished by the testimony. It establishes that the desertion
occurred in Brooklyn in September, 1901, and that the cause
of action arose in September, 1903, when the parties were
living in Brooklyn, New York. To justify the present suit
the petitioner relied upon the testimony of his son, Harris
K. Light, who says that in the month of May, 1916, at the
request of his father, he called upon his mother, who was
then living in Morristown, where she now resides, and has
resided to his knowledge from May, 1916, up to the present
time, except for a short period, when she resided at Summit,
New Jersey, being a nurse in the Overland Hospital at Sum-
mit; that he called upon her at the solicitation of his father
to endeavor to effect a reconciliation; that he told her that
his father would be glad to live with her, and asked her if
she would come back and live with him. She refused, and
said that she did not want to have anything to do with him,
and did not want his name brought in in any conversation:
that she was going under her maiden name, Etta A. Hag-
gerty; that she did not want to have anything about her that
reminded her of the petitioner. He further testified that he
saw her on an average of four times that year, and on all of
these occasions brought up the subject of her going back to
live with his father; that she always detested the subject,
and said she would never live with him and did not want to
have anything to do with him. This was during the year of
1916. He then saw her on an average of four times a year
up to 1921, but never brought up the subject, because he saw

her mind was so fixed and that it was useless. She never asked him about his father or manifested any interest in him.

"The question for decision is whether, after having first been denied a divorce in the State of New Jersey on the ground that the desertion occurred in New York in 1901, and the right of action accrued in 1903, when the petitioner was still living in Brooklyn, he can now allege and affirm that there was a new desertion in May, 1916, by reason of his having asked his wife to return to him, and her refusal so to do. I am of the opinion that this, as a legal proposition, is not correct. It is the duty of a husband at all times to use sincere efforts to induce his wife to return to him, and if the proposition advanced in this matter were true, then every attempt on the part of a husband to induce his wife to return would constitute a new desertion, for instance, in a case where the desertion occurred in Brooklyn in 1901, and the petitioner came to live in New Jersey in 1910, he could try to induce his wife to return to him, and if she refused, he could allege the desertion to have occurred at the latter date, when in fact it did occur in 1901. In this way, the court of chancery of New Jersey could be made a medium of fraud. It is well known that a divorce for desertion cannot be granted in New York. If parties separate in New York, all that a husband would have to do would be to come to New Jersey to live, ask his wife to return to him, and if she refused to do it, allege that she deserted him on that day.

"If I am wrong in this conclusion, still I think that the means adopted by the husband to induce his wife to return to him were not sufficient. He evidently wanted to get a divorce from her. The evidence shows that, after the previous suit was decided adversely to him, he sent his son to see the wife, evidently to lay a foundation for a new suit. I don't think his attempt to have her return to him was sincere and made in good faith. If he had been sincere, and if his attempt had been made in good faith, he would have gone himself to see his wife, or he would have written her a letter, or would have done something more than to have perfunctorily sent his son to see her and accepting her refusal as final.

"The case of *Schmidt* v. *Schmidt, 117 Atl. Rep. 400,* I think, is the latest case upon this subject. I quote from it as follows: 'It does not appear but that he could have at any time returned and resumed his position in the household, and by effort and tact possibly restored connubial relations with his wife. Did he make reasonable effort towards the recon ciliation? He says he wrote a number of letters to her, asking that he be taken back, only one of which was answered, and that one he does not produce, and after a lapse of time sent two women acquaintances to solicit her to do so, and that she refused. Letter writing was not the way. Personal communication—heart to heart talk—might have brought favorable results.' The use of women missioners was tactless, and an affront which any spirited wife would resent, as this one undoubtedly did.'

"Being of the opinion that the defendant's refusal to return to her husband did not constitute a new desertion on her part, and that his efforts to induce her to return were not sincere, I will advise a decree of dismissal."

*Mr. George W. W. Porter,* for the appellant.

PER CURIAM.

The decree under review herein is affirmed by an equally divided court.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, MINTURN, KATZENBACH, CAMPBELL, WHITE—6.

*For reversal-* -PARKER, KALISCH, BLACK, GARDNER, VAN BUSKIRK, CLARK—6.